**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| QIETH MCQUREERIR | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-04-3339 |
| UNITED STATES OF AMERICA, et al., | * | |
| Defendants. | * | |

\*\*\*\*\*

## MEMORANDUM OPINION

Plaintiff Qieth McQureerir ("Plaintiff" or "McQureerir") brings this action against the United States and numerous federal officials, including John E. Potter, Postmaster General; Patrick Donahue, Chief Operating Officer of the United States Postal Service ("USPS"); Thomas Day, USPS Vice President of Engineering[1]; Timothy C. Haney, Washington D.C. Processing and Distribution Center Plant Manager; Julie L. Gerberding, Director of the Centers for Disease Control ("CDC"); Unknown United States Agencies 1-5; and Unknown Federal Officials, Supervisors, Managers, etc. 6-10 (collectively, "Defendants"). Citing the Fifth Amendment to the United States Constitution, as well as a variety of common law torts, Plaintiff seeks monetary relief for anthrax-related injuries incurred while working at the Brentwood Mail Processing Facility in Washington, D.C. Currently pending before the Court is Defendants' Motion to Dismiss [21]. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will DENY Defendants' Motion to Dismiss, and will instead TRANSFER the case to the United States District Court for the District of Columbia.

---

[1] Although not listed on the docket report, Mr. Day is cited as a defendant in each of Plaintiff's eleven counts.

**FACTUAL & PROCEDURAL BACKGROUND**

The following facts are taken in the light most favorable to the non-movant. Plaintiff, an employee of the USPS, worked at the Washington D.C. Mail Processing and Distribution Center at Brentwood Road (the "Brentwood Facility") in the fall of 2001. The Brentwood Facility processes all mail destined for U.S. Government offices in the District of Columbia.

On October 9, 2001, anthrax-laden letters addressed to Senator Tom Daschle and Senator Patrick Leahy were deposited in the U.S. mail in Trenton, New Jersey. On October 11, the Daschle letter entered the Brentwood Facility in a mailbag, and the letter was moved by mail transport equipment to the Government Mail Section for delivery to the Hart Senate Office Building. The bag was opened and the mail was fed into Delivery Bar Code Sorter ("DBCS") machine #17. Between 8:00 a.m. and 9:40 a.m. on October 11, DBCS #17 was opened and the mechanisms of the machine were cleaned with a blast of compressed air. This procedure spread anthrax spores in the air and throughout the entire Brentwood Facility.

The Daschle letter was delivered to the Hart Senate Office Building on Friday, October 12. The following Monday, October 15, the letter was opened, immediately arousing suspicion when it released a fine white powder. The Capitol Police were summoned, and they performed a field test indicating that the letter likely contained anthrax. The Hart Senate Office Building was promptly closed, and Senator Daschle's staffers were tested and given antibiotics.

That same day, relying on media reports, the employees at the Brentwood Facility learned about the Daschle letter. Larry Littlejohn, a technician whose responsibilities included maintenance of the DBCS machine through which the Daschle letter had passed, requested a briefing on anthrax-related safety procedures. According to the Complaint, Littlejohn's supervisor refused to conduct

2

the briefing, punished Littlejohn with a seven-day suspension, and had him forcibly removed from the facility. Word of this incident, which the Brentwood employees interpreted as a signal to remain quiet and refrain from raising safety concerns with management, spread quickly.

The following day, October 16, the Federal Bureau of Investigations ("FBI") notified the USPS Inspection Service, which in turn notified Postmaster General John E. Potter, that laboratory tests revealed that the Daschle letter contained "potent" anthrax. Brentwood Employees did not receive the notification. Instead, USPS officials allegedly instructed supervisors at the Brentwood Facility to tell their employees that there was no evidence that the anthrax-contaminated letter had passed through the facility at any time.

On October 18, all buildings on Capitol Hill were closed and quarantined. At noon, Postmaster General Potter held a press conference on the floor of the Brentwood Facility, stating that the premises were safe. Meanwhile, a private company had been contracted to test the Brentwood Facility for anthrax contamination. Workers wearing protective gear began taking samples that afternoon, and soon found that the mail sorting equipment "tested hot." The workers from the private company were joined by members of a HAZMAT Team from Fairfax County, Virginia. Alarmed by the sight of biohazard experts in "moonsuits," Brentwood Facility employees asked why they were required to continue working without any protection and why the machines and building were being tested and they were not. Allegedly, Plant Manager Haney refused to answer the employees' questions, and continued to tell them that they had no reason to be alarmed.

By October 19, USPS officials knew which machine at the Brentwood facility processed the Daschle letter, and subsequently USPS Chief Operating Officer Donahue and USPS Vice President Willhite requested that all Brentwood employees be placed on antibiotics. However, that same day,

3

Postmaster General Potter told a television interviewer that initial tests showed no evidence of anthrax contamination at Brentwood, and Brentwood supervisors posted this information on all employee bulletin boards at the facility. That evening, a Brentwood employee who was suffering from possible anthrax exposure checked into the hospital. This employee's status was apparently discussed early the next day, at the 6:00 a.m. meeting of the Mayor's Office of Emergency Response, which was attended by Plant Manager Haney and other USPS officials. Nonetheless, in meetings held with Brentwood employees on October 20, Haney assured them that no anthrax had been found and that the hospitalized employee had not tested positive.

At 4:39 a.m. on October 21, Brentwood employee Thomas Morris called 911 complaining of anthrax-like symptoms. He died of inhalation anthrax several hours later. Later that day, a representative from the CDC told Plant Manager Haney that the Brentwood Facility needed to be closed. Haney called a meeting of all Brentwood employees and informed them that they could leave; however, certain employees were told to remain in order to take mail outside of the building and to shut down equipment. The Brentwood Facility was finally closed at approximately 5:00 p.m. on October 21, ten days after the Daschle letter had passed through the building. It was also on that day that Brentwood Facility employees were first given antibiotics for exposure to anthrax.

On October 22, Joseph Curseen, a Brentwood employee, checked into the hospital with flu-like symptoms. Within hours, Mr. Curseen died of inhalation anthrax. That same day, at least two more Brentwood employees, including Plaintiff, were hospitalized with anthrax-like symptoms. Plaintiff claims that he continues to suffer from both the emotional trauma and the physical effects of his exposure to anthrax.

On October 7, 2003, Plaintiff submitted three administrative claims, each in the amount of

$10 million, with the USPS, the CDC, and the Attorney General. Those claims are deemed to have been denied. On October 15, 2004, Plaintiff filed his Complaint in the United States District Court for the District of Maryland. Defendants' Motion to Dismiss was entered on May 10, 2005. That motion is ripe and ready for disposition.

## DISCUSSION

Plaintiff lays out eleven counts against the government and its officials in his Complaint. Counts I and II of the Complaint are "constitutional tort" claims under the theory set forth in the landmark case of *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), in which the Supreme Court recognized an implied private right of action for damages against federal officials who violate fundamental constitutional rights. Plaintiff alleges that Defendants violated the Fifth Amendment by giving false information to postal employees about the safety of the Brentwood Facility after Defendants allegedly knew it was contaminated by anthrax. Specifically, Count I alleges a Fifth Amendment procedural due process violation because the officials' alleged failures to inform Plaintiff of known dangers and truthful information deprived him of applicable remedies allowed by law and under USPS collective bargaining agreements. Count II of the Complaint alleges a Fifth Amendment substantive due process violation, claiming a "clearly established substantive due process liberty interest in a safe work environment free from needless danger." Pl.'s Compl. at ¶ 90. Plaintiff asserts that Defendants infringed upon that right by failing to invoke USPS emergency response measures, offering false and misleading information, failing to close down the facility in a timely manner, and failing to provide accurate information about the safety of the facility.

The final nine counts are common law tort claims. These include Intentional Infliction of

Emotional Distress, Battery, Negligence, Premises Liability, Strict Liability for Abnormally Dangerous Activity, Intentional Misrepresentation-Deceit, Intentional Misrepresentation-Non Disclosure of Material Fact, Constructive Fraud, and Civil Conspiracy.

Defendants move to dismiss Plaintiff's Complaint in its entirety. Defendants first assert that Plaintiff has failed to perfect service of process over Defendant Day.[2] Defendants also argue that even if service of process over Day were to be perfected, neither Defendant Day nor Defendant Gerberding, who are both residents of Virginia, are subject to personal jurisdiction within this district. Neither has maintained the sort of "continuous and systematic" or "substantial" contacts with the State of Maryland that justify the exercise of "general jurisdiction," nor do their contacts with Maryland provide the basis for the instant suit, such that the exercise of "specific jurisdiction" would be warranted.[3]

In addition, Defendants claim that Plaintiff's constitutional tort claims must be dismissed because venue is improper in this district. Under 28 U.S.C. § 1391(b), venue lies: (1) where any defendant resides, if all defendants reside in the same state; (2) where a substantial portion of the events or omissions giving rise to the claim occurred; and (3) where any defendant may be found, if there is no other district in which the claim may properly be brought.[4] In the present case,

---

[2] An inspection of the docket report substantiates this assertion.

[3] Although Defendants' argument that this Court lacks personal jurisdiction over individual defendants Day and Gerberding appears meritorious, the Court need not address this issue any further, as our decision is based on alternative grounds, as discussed below.

[4] In addition to § 1391(b), Plaintiff suggests that § 1391(e) allows for venue in the District of Maryland. Section 1391(e)(1) provides that in a civil action against an officer of the United States, venue will be proper in the district where the plaintiff resides. Plaintiff is a Maryland resident. Defendants point out, however, that venue under § 1391(e) is appropriate only when a federal officer is sued in his official capacity for equitable relief. *See Stafford v. Briggs*, 444 U.S. 527, 542-44 (1980). In a *Bivens* action such as the case at hand, federal officers are sued in their

subsection (1) is inapplicable because the individual defendants reside in different states; subsection (2) is unavailing because the conduct giving rise to this lawsuit took place almost entirely within the District of Columbia; and subsection (3) fails to provide venue within the District of Maryland because there is another district where the action may be brought: the District of Columbia. Therefore, Defendants argue, Plaintiff's constitutional tort claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(3). Plaintiff's only response is to reassert that a substantial part of the events or omissions giving rise to his claim took place in this district, and to request discovery in order to be able to establish venue. The Court finds this "argument" unconvincing; Plaintiff's Complaint makes clear that Washington, D.C. was the location of the overwhelming majority of the "events and omissions" giving rise to his claim,[5] and no amount of discovery is likely to demonstrate otherwise. Accordingly, the Court finds that Plaintiff has failed to establish venue within the District of Maryland.

A different result obtains with respect to Plaintiff's common law tort claims, because those claims must be construed as having been brought under the Federal Tort Claims Act ("FTCA"). The FTCA specifically provides for venue in the district where the plaintiff resides. 28 U.S.C. § 1402(a)(1). Here, Plaintiff has asserted that he is a resident of the State of Maryland, and has provided a Maryland Post Office Box located within this district as his address. This is sufficient to provide for venue within this district with respect to Plaintiff's common law tort claims.

---

individual capacities for monetary relief; consequently, § 1391(e) is irrelevant to Plaintiff's constitutional tort claims.

[5] The only references to Maryland in Plaintiff's Complaint are to the Fort Detrick, Maryland location of the U.S. Army Medical Research Institute for Infectious Diseases, where the Daschle letter was sent for testing, and the Wheaton, Maryland location of the P.O. Box listed as Plaintiff's address.

Without addressing the merits of Plaintiffs constitutional and common law claims, or Defendants' substantive defenses thereto,[6] the Court notes that, as discussed *supra*, Maryland is the appropriate venue for only a portion of Plaintiff's claims. Ordinarily, venue must be established for each separate claim within a plaintiff's complaint. *See Lengacher v. Reno*, 75 F. Supp. 2d 515, 518 (E.D. Va. 1999) (citing *Lamont v. Haig*, 590 F.2d 1124, 1135 (D.C. Cir. 1978)). Therefore, it is within the Court's discretion, pursuant to 28 U.S.C. § 1406, to either dismiss Plaintiff's *Bivens* claims, or, "if it be in the interest of justice," to transfer the case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

In *Benton v. England*, 222 F. Supp. 2d 728 (D. Md. 2002), the court faced an analogous situation when it determined that venue within the District of Maryland was proper for the plaintiff's ADEA claims, but not her Title VII or ADA claims. Judge Chasanow noted that "the only connection between the District of Maryland and this case seems to be the fact that Plaintiff resides in Maryland," *id.* at 731, and that, while the residence provision of § 1391(e)(1) would establish Maryland venue for a portion of the plaintiff's claims, "venue would be proper for *all* of Plaintiff's claims in the District of Columbia." *Id.* (emphasis added). Rather than address the plaintiff's claims in a piecemeal fashion, Judge Chasanow found that the "most efficient and sensible result" would be to transfer the case to the District of Columbia. *Id.* at 732 (quoting *Lengacher*, 75 F. Supp. 2d at 519).

---

[6]Defendants argue that Plaintiff's constitutional tort claims should be dismissed because Plaintiff has failed to make out a constitutional violation, because there are "special factors" counseling against the creation of a constitutional tort remedy for Plaintiff's claims, and because the individual federal officials are entitled to qualified immunity for their actions. Defendants further argue that Plaintiff's common law tort claims are barred by the Federal Employees' Compensation Act ("FECA").

8

Similarly, in *McNeil v. James*, 2004 U.S. Dist. LEXIS 22804 (D. Md. 2004), the plaintiff brought Title VII and ADEA claims, only the latter of which were properly before the court. Facing the defendant's motion to dismiss, the plaintiff urged the court to employ the doctrine of "pendent venue," which acts as an exception to the general rule that venue must be established for each claim in a complaint. *Id.* at *4-5. Derived from the concept of pendent jurisdiction, pendent venue allows for the adjudication of multiple claims stemming from the same cause of action, provided that venue is proper for at least one of the claims. *See Lengacher*, 75 F. Supp. 2d at 518. Judge Blake noted that the Fourth Circuit had not squarely addressed the issue of pendent venue, and that the courts which had generally took one of two approaches. Some held that the more specific venue provision controls. *See, e.g., Trujillo v. Total Bus. Sys., Inc.*, 704 F. Supp. 1031, 1032 (D. Colo. 1989). Other courts based their decision on the venue of the "primary" claim. *See, e.g., Hayes v. RCA Serv. Co.*, 546 F. Supp. 661, 664 (D. D.C. 1982). Judge Blake found that neither approach would support pendent venue in the case at hand; the more specific venue provision of Title VII would only permit venue in the District of Columbia, and the court could not say which of the plaintiff's claims was "primary." *McNeil*, 2004 U.S. Dist at *5-6. Consequently, "[i]n the interest of justice and judicial economy," Judge Blake transferred the case to the District of Columbia, where venue was proper for both of the plaintiff's claims. *Id.* at *6.

No courts within this Circuit appear to have addressed the issue of partial venue in the context of a complaint raising claims under both *Bivens* and the FTCA. Presumably, the interests of promoting judicial economy and avoiding bifurcation of claims are as prevalent in the *Bivens*/FTCA arena as they are in the Title VII/ADEA domain. In *Andrade v. Chojnacki*, 934 F. Supp. 817 (S.D. Tex. 1996), the District Court for the Southern District of Texas held that where

venue was proper for plaintiffs' FTCA claims, but improper for their constitutional claims under *Bivens* and Sections 1983 and 1985, transfer to another district, "in the interest of avoiding piecemeal litigation," was the appropriate solution. *Id.* at 830-31.

Similarly, rather than dismiss Plaintiff's *Bivens* claims on the basis of improper venue, this Court finds that the interests of justice would be better served by transferring this case to a district where venue over all of Plaintiff's claims will lie. Accordingly, pursuant to 28 U.S.C. § 1406, this action will be transferred to the United States District Court for the District of Columbia.

## **CONCLUSION**

For all of the aforementioned reasons, the Court will DENY Defendant's Motion to Dismiss [21], finding instead that the "interests of justice" would be better served by transferring the action to the United States District Court for the District of Columbia.  An Order consistent with this Opinion will follow.

Date:  <u>October 26, 2005</u>                              <u>          /s/                    </u>
                                                                Alexander Williams, Jr.
                                                                United States District Court